918 P.2d 521 (1996)
82 Wash.App. 355
Ronald C. FOSS; Richard E. Streeter; Wilfred O. Parsinen; and Daren Vom Steeg, Respondents/Cross-Appellants,
v.
The DEPARTMENT OF CORRECTIONS of the State of Washington, Appellant/Cross-Respondent.
No. 18747-7-II.
Court of Appeals of Washington, Division 2.
May 17, 1996.
Publication Ordered June 28, 1996.
*523 Martin E. Wyckoff, Assistant Atty. Gen., Corrections Div., Olympia, for Appellant.
Eric R. Hansen, Federal Way, for Respondents.
*522 BRIDGEWATER, Judge.
The Department of Corrections (DOC) appeals a Clallam County Superior Court order granting summary judgment for four teachers denied access to the Clallam Bay Corrections Center. The teachers cross-appeal, contending the superior court erred because it failed to properly consider First Amendment principles when granting them summary judgment. Because the teachers have no cognizable claim against the DOC, we reverse and dismiss with prejudice all of the teachers' claims.
The DOC contracted with Peninsula College wherein the college provided the Clallam Bay Corrections Center with teachers. Under the DOC/College contract, the prison superintendent could pre-review teaching candidates for the upcoming year. Under the College/Faculty Association contract, denial of access to the prison was sufficient cause for discharge. Four non-tenured teachers who taught at the correctional facility were denied access to the prison by the prison's superintendent because the teachers contested the college's legal right to change "job descriptions and conditions" in their renewal contracts. The college notified the teachers that, because their access to the prison was denied, their contracts would not be renewed. The teachers filed a petition for review in superior court seeking to regain access to the prison, naming the DOC as a party, not the college, and alleging the DOC acted unconstitutionally, outside its authority, and arbitrarily and capriciously. The superior court, determining that the DOC had violated contractual and constitutional rights, granted summary judgment for the teachers.
Courts traditionally respond to the unique problems of penal environments by invoking a policy of judicial restraint. This policy is designed to give prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).
There are three potential avenues of appeal from the decision of an administrative agency. First, a specific statute may authorize appeal.... Second, any party may obtain review by a statutory writ of certiorari if the agency is "exercising judicial functions." RCW 7.16.040. Finally, the courts have inherent constitutional power to review "illegal or manifestly arbitrary and capricious action violative of fundamental rights". State ex rel. DuPont-Fort Lewis Sch. Dist. 7 v. Bruno, 62 Wash.2d 790, 794, 384 P.2d 608 (1963).
Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 693, 658 P.2d 648 (1983).
The DOC contends the superior court had no subject matter jurisdiction to consider the teachers' petition for review. The DOC argues that the teachers had no statutory authority for appealing the DOC's decision, and failed to plead an illegal or manifestly arbitrary *524 and capricious action violative of fundamental rights.
A dismissal for failure to state a claim under CR 12(b)(6) is appropriate only if "`it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Haberman v. WPPSS, 109 Wash.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting Bowman v. John Doe, 104 Wash.2d 181, 183, 704 P.2d 140 (1985) (quoting Orwick v. Seattle, 103 Wash.2d 249, 254, 692 P.2d 793 (1984))).
Bravo v. Dolsen Companies, 125 Wash.2d 745, 750, 888 P.2d 147 (1995).

I

A
The teachers had no statutory authority under the Washington Administrative Procedure Act (APA) to appeal the DOC's decision.
The provisions of the APA do not apply to "[t]he department of corrections ... with respect to persons who are in their custody or are subject to the jurisdiction of those agencies." RCW 34.05.030(1)(c). We hold that a teacher entering a correctional facility to perform services is subject to the jurisdiction of the DOC because teachers can affect order and discipline within an institutional prison. Thus, a DOC decision denying a teacher access to a correctional facility is not subject to review under the APA.

B
Even were the decision not exempt from the provisions of the APA, the teachers in this case do not have standing under the APA to challenge the superintendent's decision. The APA provides that:
A person has standing to obtain judicial review of agency action if that person is aggrieved or adversely affected by the agency action. A person is aggrieved or adversely affected within the meaning of this section only when all three of the following conditions are present:
(1) The agency action has prejudiced or is likely to prejudice that person;
(2) That person's asserted interests are among those that the agency was required to consider when it engaged in the agency action challenged; and
(3) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the agency action.
RCW 34.05.530. The APA defines an agency action as
licensing, the implementation or enforcement of a statute, the adoption or application of an agency order, the imposition of sanctions, or the granting or withholding of benefits.

Agency action does not include an agency decision regarding (a) contracting or procurement of ... services, ... as well as all activities necessarily related to [that] function....
RCW 34.05.010(3) (emphasis added).

1.
It is clear from the terms of the College/Faculty Association contract that the teachers are employees of the college. The college hired the teachers. The college negotiated a contract with the faculty association. The college proposed the terms of the teachers' renewal contracts. The college terminated the teachers' employment. The superintendent's letter did not direct the college to terminate their teachers. In fact, the teachers assert only that the superintendent knew his decision "could result in the termination of their employment" and not "would result." Because the teachers did not have an employment contract with the DOC, the DOC's action concerns a contract for services, nothing more, and an appeal under the statutory provisions of the APA does not lie.

2.
In addition to the absence of an "agency action" subject to review, the teachers fail to show under subsection (2) of the APA standing provision that the DOC was required to consider the individual teachers' interests in continued access to the facility when it denied them access. Although the language in the College/Faculty Association *525 contract indicates that the superintendent may deny a teacher access to the facility if the teacher is considered by the superintendent to be undesirable, the teachers have failed to show how that contract can bind the superintendent when he is not a party to the contract. Absent a contractual right or some other legally cognizable right to enter the prison, the teachers fail to show the superintendent was required by law to consider their interests before denying them access.
We hold that (1) because the DOC's decision was exempt by statute from review under the APA, and, in the alternative, (2) because the teachers lacked standing under the APA to challenge a decision that (a) was not an agency action and (b) involved a contract for services, the teachers were without statutory authority to petition the superior court for review of the DOC's decision.

II
Because the teachers do not have the statutory authority to seek review of the DOC's decision, we address whether any remaining avenues for appellate review were open to the teachers. The superintendent's decision was not quasi-judicial; therefore, no writ of certiorari lies. See Williams v. Seattle Sch. Dist. No. 1, 97 Wash.2d 215, 218-20, 643 P.2d 426 (1982). The only remaining basis for superior court jurisdiction, then, depends on a DOC action that was an "illegal or manifestly arbitrary and capricious action violative of fundamental rights." Bruno, 62 Wash.2d at 794, 384 P.2d 608.
Under article 4, section 6 of the Washington State Constitution superior courts possess constitutional and inherent power to review allegedly illegal or manifestly arbitrary and capricious nonjudicial administrative action violative of a "fundamental right." ...
. . . .
the fundamental right limitation boils down to a rule which says that a complainant with standing has a fundamental right to have the agency abide by the constitution, statutes, and regulations which affect the agency's exercise of discretion.
Hough v. Personnel Bd., 28 Wash.App. 884, 887-88, 626 P.2d 1017 (1981) (quoting Wilson v. Nord, 23 Wash.App. 366, 373, 597 P.2d 914, review denied, 92 Wash.2d 1026 (1979)). The scope of the court's supervisory jurisdiction is "quite narrow." Williams, 97 Wash.2d at 221, 643 P.2d 426. "[T]he judiciary will only review the actions of an administrative agency to determine if its conclusions may be said to be, as a matter of law, arbitrary, capricious, or contrary to law." Williams, 97 Wash.2d at 221, 643 P.2d 426 (emphasis added) (quoting Helland v. King County Civil Serv. Comm'n, 84 Wash.2d 858, 862, 529 P.2d 1058 (1975); Reiger v. City of Seattle, 57 Wash.2d 651, 653, 359 P.2d 151 (1961)). The superior court is without inherent supervisory jurisdiction to consider the merits of a writ of petition when the petitioner fails to show the violation of a fundamental right. Williams, 97 Wash.2d at 221-223, 643 P.2d 426.
In Williams, a school board upheld a school superintendent's decision to transfer elementary school vice-principals to teacher positions because of budget constraints. The trial court determined the school board's decision was arbitrary, capricious, and contrary to law. The Supreme Court determined that "a legitimate expectation of freedom from arbitrary action, which dictates being treated consistent with the statutes and policies governing their employ" is a fundamental "expectation," but, concluding that the Board's decision was consistent with published goals concerning budget management and did not appear arbitrary and capricious, the Supreme Court reversed the trial court and reinstated the Board's decision. Williams, 97 Wash.2d at 216-24, 643 P.2d 426.
In this case, the teachers fail to show the superintendent's decision was contrary to any rules, goals, or policies concerning when a superintendent may deny a person access to a correctional facility. In fact, in the hundreds of pages of record there are no rules, goals, or policies to which this court could subject the superintendent's decision to any meaningful review. The teachers claim no statutory violation. The only question, then, is whether the superintendent failed to *526 abide by constitutional mandates when he denied the teachers access to the prison.
The teachers claim the DOC decision violated their following constitutional rights: (1) procedural due process right to a hearing; (2) First Amendment right to association and free speech; and (3) a fundamental right to be free from arbitrary and capricious state action implicating a constitutional interest. First, we address whether the teachers had standing on a non-statutory basis to challenge the DOC's action. "The basic test for standing is whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" City of Seattle v. State, 103 Wash.2d 663, 668, 694 P.2d 641 (1985) (quoting Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 493, 585 P.2d 71 (1978). The teachers do not have standing to challenge the DOC's action. We hold that, in the absence of a contract with the DOC, the teachers have failed to show they have standing to contest the DOC's decision because their interest in regaining access to the prison is not within the zone of interests protected by any constitutional guarantee in question.

A
The teachers contend they were deprived of a liberty interest in further employment without due process. To see if there was a cognizable liberty interest, we apply the standards in Dicomes v. State, 113 Wash.2d 612, 629, 782 P.2d 1002 (1989). We hold that the teachers have failed to present any facts that show the DOC dismissed the employees; called into question their good name, honor, or integrity; or foreclosed their freedom to take advantage of other employment opportunities. The letter written by the superintendent does not implicate their integrity or honor. Declarations, affidavits, and internal discussions related to job performance cannot supply support for such a claim. Dicomes, 113 Wash.2d at 629, 782 P.2d 1002 (citing Bishop v. Wood, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976)). Because no liberty interest was implicated by the DOC's decision, the teachers were not entitled to due process.

B
The teachers contend the superintendent violated their First Amendment right to associate with a collective bargaining unit, and to associate with the prisoners. Full freedom of association of workers is protected by statute, case law, and our state and federal constitutions. RCW 49.32.020; Bravo, 125 Wash.2d at 751, 888 P.2d 147; Trumbauer v. Group Health Coop. of Puget Sound, 635 F.Supp. 543 (W.D.Wash.1986); Const. art. I, § 5; U.S. Const. amend. I. The public policy statute, RCW 49.32.020, confers such substantive rights on employees as being free from "`coercion, interference and restraint from and by their employers in organizing or joining a labor union and in designating such union as their agent for collective bargaining.'" Bravo, 125 Wash.2d at 753, 888 P.2d 147 (quoting Krystad v. Law, 65 Wash.2d 827, 846, 844, 400 P.2d 72 (1965)). The statute's purpose is "`to facilitate the achievement by employees of an effective bargaining position.'" Bravo, 125 Wash.2d at 754, 888 P.2d 147 (quoting International Union of Operating Eng'rs Local No. 286 v. Sand Point Country Club, 83 Wash.2d 498, 502, 519 P.2d 985 (1974). Collective bargaining agreements may waive these substantive rights. Trumbauer, 635 F.Supp. 543. There is no evidence of coercion, interference, or restraint from and by the DOC. There is no evidence in the record that the DOC interfered with the teachers' right to join a faculty association, to have their association engage in advocacy on their behalf, or to have the agreement between their bargaining unit and the college enforced. The teachers did not, through their association, enter into a third-party bargaining agreement with the college or the DOC such that they could challenge a DOC decision to deny them access. See, e.g., Western Wash. Cement Masons Health & Sec. Trust Funds v. Hillis Homes, Inc., 26 Wash.App. 224, 230, 612 P.2d 436 (discussing "hot cargo" agreements that require an employer to cease doing business with another person with whom the union has a dispute), review denied, 94 Wash.2d 1014 (1980). Nor is there evidence that the DOC's decision *527 infringed their right to collectively bargain with or present a grievance to the college. It is also impossible to determine on what authority the teachers might allege that access to the prison is a lawful interest. Certainly, they did not have any vested contractual right of access to the prison.

C
The teachers contend they were denied their First Amendment right to free speech. We apply the two-part test set forth in Dicomes, 113 Wash.2d at 624-625, 782 P.2d 1002, examining whether the content or context of the speech implicates a First Amendment speech guarantee. In Dicomes, the court noted that disputes related to conditions of employment do not implicate the First Amendment because they raise matters of private concern, not public concern. We hold that the teachers' letters written to the college concerning the right of the college to define their job descriptions and conditions for further employment relate to private matters, and thus do not implicate First Amendment speech guarantees. We need not consider the letters' context.

D
The teachers allege arbitrary and capricious action; the teachers' burden is to demonstrate arbitrary and capricious action by proving "`willful and unreasoning action, without consideration and in disregard of facts and circumstances.'" Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648 (quoting State v. Rowe, 93 Wash.2d 277, 284, 609 P.2d 1348 (1980)). The DOC's decision, not implicating a contractual, statutory, policy, or constitutional right, is not subject to appellate review. Even if it had implicated some right, the superintendent's action was not willful and unreasoning, without consideration and in disregard of facts and circumstances because it appropriately balanced the interests of a penal institution with the interests of the teachers. The superintendent is required to maintain a safe, secure, humane, and efficient environment for incarcerated felons while protecting the public. It is essential that everyone under his supervision work together, and be role models for anti-social and recalcitrant inmates in need of being socialized.
The superior court erred when it denied the DOC's CR 12(b)(6) motion to dismiss.
We reverse and remand for the superior court to vacate its judgment and dismiss with prejudice the teachers' petition for review.
SEINFELD, C.J., and HOUGHTON, J., concur.