263 P.3d 1251 (2011)
Larry WESTBERRY and a class of similarly situated individuals, Appellant,
v.
INTERSTATE DISTRIBUTOR CO., Respondent.
No. 40687-0-II.
Court of Appeals of Washington, Division 2.
October 4, 2011.
*1252 David Frank Stobaugh, Stephen Kolden Strong, Stephen Kirk Festor, Bendich Stobaugh & Strong PC, Seattle, WA, Catherine Wright Smith, Smith Goodfriend PS, Seattle, WA, for Appellant.
Dave Luxenberg, McGavick Graves PS, Tacoma, WA, for Respondent.
Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, amicus counsel for Washington Trucking Associations.
QUINN-BRINTNALL, J.
¶ 1 Larry Westberry, the representative of a proposed, as yet uncertified, class of similarly situated individuals, appeals the trial court's summary judgment in favor of his former employer, Interstate Distributor Co. (Interstate). Interstate employed Westberry as a line-haul truck driver from 2003 to 2007, and paid him according to a compensation system approved by the Department of Labor and Industries (L & I) as reasonably equivalent to the Washington Minimum Wage Act's (MWA) overtime pay requirements. See ch. 49.46 RCW. Westberry sued Interstate, alleging Interstate violated the MWA and Bostain v. Food Express, Inc., 159 Wash.2d 700, 153 P.3d 846, cert. denied, 552 U.S. 1040, 128 S.Ct. 661, 169 L.Ed.2d 512 (2007), when it did not pay him one and one-half times his regular pay rate for hours over 40 worked per week. On appeal, Westberry argues that L & I's MWA compliance approval of an employer's compensation system is merely a nonbinding ex parte opinion and that the trial court erred by relying on L & I's approval process when it granted summary judgment. Because Westberry's summary judgment challenge lacks merit, we affirm.

FACTS
¶ 2 Interstate, a Washington corporation, employed Westberry, a Georgia resident with a Georgia commercial driver's license, as a *1253 line-haul truck driver from August 7, 2003, to June 27, 2007. Interstate compensated Westberry on a per-mile basis for miles driven, a flat rate for each load/unload performed, and a per diem subsistence rate. Westberry drove on average 60 to 70 hours per week, both in and out of Washington State.
¶ 3 On March 1, 2007, our Supreme Court held that the MWA required overtime compensation for hours over 40 worked per week for interstate driving, including hours Bostain, a Washington resident, spent working outside of Washington. Bostain, 159 Wash.2d at 713, 153 P.3d 846. Prior to Bostain, interstate truck drivers like Bostain earned overtime compensation only for hours worked in Washington. Former WAC 296-128-011 (1989). Under former WAC 296-128-012(c) (1989), L & I reviewed alternative rate of pay systems used by employers to determine whether the systems resulted in a driver receiving compensation reasonably equivalent to one and one-half times the base rate of pay for actual hours worked in excess of 40 hours per week.
¶ 4 On December 13, 2007, Interstate sought a determination from L & I "that its mileage-based pay structure for interstate truck drivers [was] reasonably equivalent to the hourly rate, including overtime, paid to [Interstate's] local drivers."[1] Clerk's Papers (CP) at 158. L & I approved Interstate's compensation system under RCW 49.46.130(2)(f) and former WAC 296-128-012 on July 18, 2008. L & I noted that "[d]rivers will typically receive greater compensation under [Interstate's] plan than if they were paid straight time for hours worked up to 40 per week and one and one-half times the regular rate of pay for hours worked in excess of 40 hours per week under RCW 49.46.130(1)." 2 CP at 201.
¶ 5 L & I revised its overtime compensation regulations effective November 21, 2008, to comply with the Bostain decision. 08-21 Wash. Reg. 90-92 (Oct. 21, 2008). Under the 2008 amended regulations, truck drivers subject to the Federal Motor Carrier Act (FMCA), 49 U.S.C. § 3101, such as Westberry,[2] are exempt from overtime as long as the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to time and one-half the driver's usual base rate of pay.[3] WAC 296-128-012. Employers using an alternative compensation system, such as Interstate, must
substantiate any deviation from payment on an hourly basis to the satisfaction of [L & I] by using [a recommended formula] that, at a minimum, compensates hours worked in excess of forty hours per week at an overtime rate of pay and distributes the projected overtime pay over the average number of hours projected to be worked.
WAC 296-128-012(1)(a). For compensation plans developed prior to the Bostain decision, L & I amended the regulation to include a "safe harbor" provision as follows:
An employer who employed drivers who worked over forty hours a week consisting of both in-state and out-of-state hours anytime before March 1, 2007, may, within ninety days of the adoption of this subsection, submit a proposal consistent with subsection (1) of this section to the department for approval of a reasonably equivalent compensation system. The employer shall submit information to substantiate its proposal consisting of at least twenty-six consecutive weeks over a representative *1254 time period between July 1, 2005, and March 1, 2007. The department shall then determine if the compensation system includes overtime that was at least reasonably equivalent to that required by RCW 49.46.130.
WAC 296-128-012(3).
¶ 6 On May 29, 2008, Westberry, a Georgia resident, filed a "class action"[4] lawsuit against Interstate in Pierce County Superior Court. His complaint alleged that Interstate violated the MWA when it failed to adequately compensate Westberry for overtime work. Westberry requested as relief (1) an order directing Interstate to pay for losses arising from Interstate's allegedly unlawful acts, (2) a declaratory judgment finding that Interstate failed to comply with RCW 49.46.130, (3) double overtime pay under RCW 49.52.070, (4) attorney fees under the common fund doctrine and RCW 49.48.030, and (5) prejudgment interest.
¶ 7 On June 24, Interstate removed the case to federal district court on the basis of diversity jurisdiction. Westberry moved to remand back to state court, arguing that the amount in controversy was less than $75,000[5] and that Interstate had artificially inflated the amount by calculating Westberry's overtime hours at 30 hours for every week of his employment regardless of whether he had actually worked 70 hours during a given week. Westberry also argued that double damages under RCW 49.52.070, if applicable, would apply only to the four months between the Bostain decision and the end of his employment with Interstate. Making no findings other than that the amount in controversy was less than $75,000, the federal district court determined it lacked jurisdiction and remanded to state court on August 22.
¶ 8 On January 15, 2009, Interstate resubmitted its pre-Bostain compensation system for L & I's review as permitted under the new "safe harbor" provision. WAC 296-128-012(3). On May 4, L & I retroactively approved the compensation system as reasonably equivalent from July 1, 2005 to July 1, 2007.
¶ 9 Westberry took no action to prosecute his case until December 2009, when he served Interstate with discovery requests. On February 1, 2010, Interstate moved to dismiss Westberry's claim under CR 12(b)(6) or, alternatively, for summary judgment under CR 56. Interstate argued that Bostain applied only to Washington resident-employees or, alternatively, even if Bostain applied to Westberry, Interstate's compensation system complied with the MWA. Westberry[6] opposed Interstate's CR 12(b)(6) motion to dismiss, arguing that Bostain was not limited to Washington residents and that the trial court was not bound by L & I's inadmissible ex parte approval of Interstate's compensation system. Westberry did not oppose Interstate's motion for summary judgment.
¶ 10 The trial court heard the motion on April 2. Westberry stated that he had no reason to submit affidavits opposing Interstate's summary judgment motion because L & I's approval of Interstate's compensation system was "just an opinion. That is not anything that the Court needs to defer to." *1255 Report of Proceedings at 8. The trial court denied Interstate's CR 12(b)(6) motion to dismiss but granted Interstate's motion for summary judgment "based on the reasonably equivalent analysis of the Department of Labor and Industries." CP at 316. Westberry timely appeals.

DISCUSSION
¶ 11 Westberry assigns error to the trial court's summary judgment in favor of Interstate based on an allegedly ex parte application from Interstate to L & I and L & I's subsequent approval of Interstate's compensation system. Westberry also argues that the trial court's failure to make its own findings of fact and conclusions of law requires that we reverse and remand. Interstate argues that summary judgment was appropriate because its compensation system complies with Bostain and the MWA and L & I's compliance review is not an ex parte communication between an employer and the agency.[7] Westberry's stated challenges lack merit.
¶ 12 We review a grant of summary judgment de novo. Bostain, 159 Wash.2d at 708, 153 P.3d 846 (citing Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wash.2d 168, 177, 125 P.3d 119 (2005); Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005)). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Bostain, 159 Wash.2d at 708, 153 P.3d 846 (citing CR 56(c); Korslund, 156 Wash.2d at 177, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, 121 P.3d 82). We view facts and reasonable inferences therefrom most favorably to the nonmoving party, here Westberry. Bostain, 159 Wash.2d at 708, 153 P.3d 846 (citing Korslund, 156 Wash.2d at 177, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, 121 P.3d 82). Summary judgment is proper if reasonable minds could reach only one conclusion from the evidence presented. Bostain, 159 Wash.2d at 708, 153 P.3d 846 (citing Korslund, 156 Wash.2d at 177, 125 P.3d 119; Berrocal, 155 Wash.2d at 590, 121 P.3d 82).

Ex Parte Communication
¶ 13 Westberry contends Interstate's 2009 application to L & I under the WAC 296-128-012(3) "safe harbor" provision for retroactive approval of its compensation system, and L & I's subsequent approval of that system, were ex parte communications. Westberry argues that because L & I issued the approval without affording potentially affected employees notice or an opportunity to be heard, the approval is not an agency determination reviewable in court, "is therefore plainly not binding in court," and "has no effect." Br. of Appellant at 7. Westberry misunderstands the definition of ex parte.
¶ 14 Because L & I is a state agency, the Administrative Procedures Act (APA), ch. 34.05 RCW, governs here. The APA provides, with limited exception, that "[a] presiding officer may not communicate, directly or indirectly, regarding any issue in the proceeding other than communications necessary to procedural aspects of maintaining an orderly process, with any person employed by the agency without notice and opportunity for all parties to participate." RCW 34.05.455(1). "Proceeding," for ex parte purposes, refers to an "adjudicative proceeding," defined in the APA as "a proceeding before an agency in which an opportunity for hearing before that agency is required by statute or constitutional right before or after the entry of an order by the agency." RCW 34.05.010(1). A "presiding officer" must be one or more members of the agency head, a person or administrative law judge designated by an agency head to make the final decision and enter the final order, or one or more administrative law judges assigned by the office of administrative hearings in accordance with ch. 34.12 RCW. RCW 34.05.425(1)(a)-(c).
*1256 ¶ 15 Here, L & I's approval of Interstate's compensation system was not an adjudicative procedure. The concept of ex parte simply does not apply. See RCW 34.05.455(1). Moreover, Westberry does not cite any statutory or constitutional authority granting potentially affected employees the right to either notice or an opportunity to be heard under these circumstances. Westberry cites only to a collateral estoppel case for the proposition that agency decisions following an adjudicatory proceeding may, under some circumstances, have preclusive effect in subsequent litigation. See, e.g., State v. Dupard, 93 Wash.2d 268, 275, 609 P.2d 961 (1980). An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). We do not consider arguments that are unsupported by any citation of relevant authority. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992). Accordingly, we hold that Interstate's application to L & I and L & I's subsequent compliance determination under WAC 296-128-012(3) were not ex parte communications.

"Reasonably Equivalent" Determination
¶ 16 Westberry also argues that because L & I's approval of Interstate's compensation system (and the compensation systems of other similarly situated transportation companies) is merely L & I's opinion carrying no binding authority, the trial court erred when it relied on L & I's reasonably equivalent determination. In support of his argument, Westberry cites to Bostain for the proposition that because the Bostain court did not follow one L & I-issued letter, no L & I issued letter is binding on any court. 159 Wash.2d at 717 n. 7, 153 P.3d 846 (citing City of Sunnyside v. Fernandez, 59 Wash.App. 578, 581, 799 P.2d 753 (1990)). Westberry misreads Bostain.
¶ 17 In Bostain, our Supreme Court held that the plain language of the MWA required employers to pay Washington employees overtime rates for hours over 40 worked per week, regardless of whether those hours were worked in Washington. 159 Wash.2d at 713, 153 P.3d 846. The Bostain court then invalidated former WAC 296-128-011 and -012 as inconsistent with the MWA because both regulations contained language limiting overtime pay to hours worked only in Washington. 159 Wash.2d at 715, 153 P.3d 846. The employer in Bostain relied on a letter expressing the opinion of an L & I employee concerning whether Bostain was owed overtime pay. 159 Wash.2d at 717 n. 7, 153 P.3d 846. The Bostain court noted that the letter was not entitled to any weight because it was merely an agency employee's subjective understanding of the agency's intent, not a formal administrative decision. 159 Wash.2d at 717 n. 7, 153 P.3d 846 (citing Fernandez, 59 Wash.App. at 581, 799 P.2d 753).
¶ 18 Substantial weight is given to an agency's interpretation of the statutes it administers that are within the agency's specialized expertise. Schneider v. Snyder's Foods, Inc., 116 Wash.App. 706, 716, 66 P.3d 640 (citing Manke Lumber Co. v. Diehl, 91 Wash.App. 793, 802, 959 P.2d 1173 (1998)), review denied, 150 Wash.2d 1012, 79 P.3d 446 (2003). We uphold an agency's interpretation if it is a plausible construction of the statute or rule. Schneider, 116 Wash.App. at 716, 66 P.3d 640 (citing Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wash.App. 495, 518, 919 P.2d 602 (1996)). Although we give due deference to the specialized knowledge and expertise of the administrative agency, such deference does not extend to agency actions that are arbitrary, capricious, and contrary to law. Schneider, 116 Wash.App. at 716, 66 P.3d 640.
¶ 19 "Under the arbitrary and capricious standard, we will reverse only if an agency action was `willful and unreasoning, and taken without regard to the attending facts or circumstances.'" Schneider, 116 Wash.App. at 716, 66 P.3d 640 (quoting ITT Rayonier, Inc. v. Dalman, 122 Wash.2d 801, 809, 863 P.2d 64 (1993)). Evaluating whether an agency's decision was arbitrary and capricious involves evaluating the evidence considered by the agency in making its decision. Schneider, 116 Wash.App. at 716-17, 66 P.3d 640 (citing Pierce County Sheriff v. Civil Serv. Comm'n, 98 Wash.2d 690, 695, 658 P.2d 648 (1983)). "`Where there is room for two *1257 opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.'" Schneider, 116 Wash.App. at 717, 66 P.3d 640 (quoting Pierce County Sheriff, 98 Wash.2d at 695, 658 P.2d 648).
¶ 20 Here, L & I's approval of Interstate's compensation system was not a product of an L & I employee's subjective opinion that Interstate was in compliance with the MWA. Rather, L & I "has the authority to supervise, administer, and enforce all laws pertaining to employment including wage and hour laws." Schneider, 116 Wash.App. at 717, 66 P.3d 640 (citing RCW 43.22.270). The department may also determine if an alternative compensation scheme is reasonably equivalent to the hourly statutory overtime requirements. WAC 296-128-012(1)(c). Such determinations are within L & I's specialized expertise. Schneider, 116 Wash.App. at 717, 66 P.3d 640.
¶ 21 WAC 296-128-012 provides specific guidelines an employer must follow in order to successfully gain review and department approval of its compensation system. Interstate used the former WAC 296-128-012 alternative method overtime formula to determine and compare overtime compensation for its Washington-based local drivers to compensation for its interstate line-haul drivers. In its application for compliance review, Interstate concluded that after using the formula to convert its line-haul drivers' pay rates to an hourly-rate equivalent, on average it paid line-haul drivers more than it paid its local drivers. Interstate also separately compared total compensation overtime without using the formula and reached the same conclusion that its Washington-based line-haul drivers earned on average more than their local counterparts.
¶ 22 Westberry does not argue, and the record does not suggest, that L & I's review of Interstate's submitted materials was in any way deficient. Accordingly, we hold that L & I's retroactive approval under the WAC 296-128-012(3) "safe harbor" provision is entitled to substantial weight and should be upheld as plausible construction of the statute, and not arbitrary, capricious, and contrary to the law. Schneider, 116 Wash.App. at 717, 66 P.3d 640. The trial court did not err in considering L & I's letter approving Interstate's compensation system.
¶ 23 Last, Westberry argues that the trial court erred by not entering its own findings of fact or conclusions of law. But a trial court is not required to enter findings of fact or conclusions of law when granting summary judgment under CR 56. See, e.g., Donald v. City of Vancouver, 43 Wash.App. 880, 883, 719 P.2d 966 (1986) ("Findings of fact... are not necessary on summary judgment... and, if made, are superfluous and will not be considered by the appellate court."). Westberry's argument fails.
¶ 24 Accordingly, because Interstate's application to L & I and L & I's subsequent approval of Interstate's compensation system were not ex parte communications, and because we give substantial weight to L & I's determination of Interstate's compliance with the MWA, we affirm the trial court's grant of summary judgment in favor of Interstate.
We concur: HUNT, J., and PENOYAR, C.J.
NOTES
[1] Westberry does not argue that Interstate erred in applying the alternative method overtime formula to its compensation system in its compliance determination application. Rather, Westberry asserts that Interstate violated the MWA by not paying him one and one-half times his regular rate of pay.
[2] Line-haul drivers are subject to the FMCA. See 49 C.F.R. § 395.3.
[3] WAC 296-128-012(1)(a) provides,

The compensation system under which a truck or bus driver subject to the provisions of the [FMCA] is paid shall include overtime pay at least reasonably equivalent to that required by RCW 49.46.130 for working in excess of forty hours a week. To meet this requirement, an employer may, with notice to a truck or bus driver subject to the provisions of the [FMCA], establish a rate of pay that is not on an hourly basis and that includes in the rate of pay compensation for overtime.
[4] The complaint defined "class members" as "individuals who were harmed as a consequence of Interstate Distributor's failure to pay overtime wages to those of its employees who worked in excess of forty hours per week." CP at 2.
[5] Westberry calculated his overtime compensation to be $3,742.47, plus $206.00 if awarded applicable double damages.
[6] In a separate action filed on March 22, 2010, Westberry, along with named plaintiffs Julie Palmer and Michael Ballew, petitioned the Thurston County Superior Court for declaratory judgment and an injunction against L & I. Plaintiffs asserted that the "safe harbor" provision providing for retroactive approval of pre-Bostain compensation systems violated the MWA and that L & I's "reasonably equivalent" standard did not comport with the MWA. Plaintiffs also argued that L & I's 2008 amendments failed to comply with Washington's Administrative Procedures Act (APA), ch. 34.05 RCW.

On May 27, 2011, Washington Trucking Associations filed an amicus curiae brief with this court, asserting that L & I had followed proper rulemaking procedures in promulgating its 2008 amendments. The parties in this case do not dispute whether the 2008 regulation amendments followed proper procedure under the APA. To the extent Westberry attempted to argue at oral argument that the "reasonably equivalent" formula is structurally flawed because it fails to comport with the MWA, the issue is not before us on appeal and we do not address it further.
[7] Without cross appealing, Interstate requests that we affirm the trial court on the separate ground that Westberry is precluded from making any claim under Bostain because Bostain is limited only to Washington-resident truck and bus drivers. Because we hold that the trial court did not err in granting summary judgment, we decline Interstate's invitation and do not reach this issue.