# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| 2ND HALF LLC, | No. 49815-4-II |
| Appellant, | |
| v. | |
| HEATHER RANKOS and GEORGE RANKOS, and their marital community, and BARBARA WEBSTER, | UNPUBLISHED OPINION |
| Respondents, | |
| JAMES and JUDITH BETOURNAY and their marital community, | |
| Defendants. | |

JOHANSON, J. — 2nd Half LLC appeals the superior court's order granting George and Heather Rankos's summary judgment motion. 2nd Half brought an action against the Rankoses and Barbara Webster, board members of the North Oakes condominium owners' association (Association), for their failure to exercise reasonable care in collecting unpaid Association dues. 2nd Half argues that because the board members owed 2nd Half a duty of care, the superior court erred when it concluded that 2nd Half could not maintain a direct, rather than derivative, claim against the board members. Because 2nd Half lacks standing, we affirm.

FACTS

I. Background[1]

James and Judith Betournay, 2nd Half (owned by Jeff and John Graham's family), an LLC owned by Webster, and an LLC owned by the Rankoses each owned condominium units in the North Oakes condominium community. Sometime before January 2015, the Betournays failed to pay Association dues and assessments, so the Association recorded a lien against the Betournays' unit. The Association, under Jeff Graham's leadership, pursued a claim against the Betournays for unpaid dues.

Also in January, during the Association's pending litigation against the Betournays, John and Jeff Graham were removed from the Association board, and a new board was instated. The Betournays cast votes in the election to remove the Grahams from the board. With the Grahams removed, the board consisted of Webster and the Rankoses.[2]

Around this time, the Betournays were in negotiations to transfer their unit to their bank by a deed in lieu of foreclosure, and the Betournays asked the Association to release their lien to make the property transfer possible. On February 9, the Association granted a lien release to the Betournays. The lien release removed the security interest the Association had in the Betournays'

---

[1] For background information, we rely on the record provided by the parties but recognize that these facts come from Webster's summary judgment motion and not the Rankoses' summary judgment motion. We do not rely on these facts in deciding the appeal of the Rankoses' summary judgment decision.

[2] The Grahams challenged their removal from the board, but we held that the removal was proper. *Graham v. Rankos*, noted at 193 Wn. App. 1051 (2016).

unit, but the unit owner, which would eventually be the bank, remained liable for unpaid dues. The Betournays executed a deed in lieu of foreclosure in favor of their bank.

The new Association board chose not to proceed to trial against the Betournays in the lawsuit to collect dues. On September 28, the action against the Betournays was dismissed without prejudice. In November, the bank paid the Association $12,194.84, which is the full amount of the outstanding dues balance on the Betournays' former unit. The Betournays owe no additional dues.

## II. 2ND HALF'S CLAIM AND SUMMARY JUDGMENT MOTIONS

### A. 2ND HALF'S CLAIM

In October, before the Betournays' outstanding dues had been paid, 2nd Half filed a complaint against the Rankoses, Webster, and the Betournays. 2nd Half claimed that the Association board members breached their duty under the condominium declaration and RCW 64.34.308 to "exercise ordinary and reasonable care to advance the interests of the Association" when the board allegedly failed to collect unpaid Association dues owed by the Betournays. Clerk's Papers (CP) at 8. 2nd Half asserted that in failing to hire a lawyer to pursue a claim against the Betournays for unpaid dues, the board members "unreasonably and wrongly exposed the Association to potential liability and loss of money for dues that's long been unpaid." CP at 8. The complaint repeatedly refers to the breach of duty owed to the Association and makes no reference to a duty owed to 2nd Half or individual Association members.

In its requests for relief, 2nd Half asked, in relevant part, for the superior court to (1) find that the defendant board members breached their statutory duty of reasonable care by "trad[ing] the *Association's right* to recover unpaid dues from the Betournays for votes to oust Jeff and John

Graham" and (2) find that defendants are "*liable to the Association* for the fees, and collection costs . . . alleged to be $20,000" that "would have been recovered from the Betournays, but which *have been made unrecoverable* on account of the defendants['] acts and omissions." CP at 9-10 (emphasis added). The complaint did not allege any injury or damages to 2nd Half or its property.

The complaint also contained allegations that the Rankoses' attorney improperly obtained and managed $50,000 of proceeds from a sheriff's sale on one of the condominium units.[3]

## B. THE RANKOSES' MOTION FOR SUMMARY JUDGMENT

On October 24, 2016, the Rankoses filed a motion for summary judgment. The Rankoses' motion apparently assumed that the issue regarding the Betournay dues had been resolved by a previous order granting Webster's summary judgment motion. On February 19, 2016, Webster had filed a motion for summary judgment. The superior court granted Webster's motion on the basis that 2nd Half failed to show that the board owed 2nd Half a duty of care, and even if the board owed a duty to 2nd Half, the duty was not breached because the bank paid the sums at issue. The Rankoses' motion stated that "Barbara Webster has already been dismissed from this case because the Complaint fails to state any claims against her. The Court should enter an order dismissing [the Rankoses] from this suit for the same reasons." CP at 537. And the Rankoses' motion stated, "The sole remaining claim in this action is that counsel for the Rankos[es]" mishandled proceeds from a sheriff sale. CP at 537.

---

[3] This issue is not relevant to this appeal, but it was at issue in the Rankoses' summary judgment motion below.

The Rankoses' motion further stated, in relevant part, that 2nd Half "cannot establish a duty, breach, injury or causation." CP at 543. And it stated, "Even if there was an actual claim, there is no recovery available directly to 2nd Half." CP at 544.

In 2nd Half's response to the Rankoses' summary judgment motion, it attacked the grounds on which the superior court granted Webster's summary judgment motion. Specifically, it challenged the conclusion that the Association board owed no duty of care to individual homeowners. And 2nd Half argued that under *Alexander v. Sanford*,[4] a homeowners' association board owes a duty of care to individual homeowners such that an individual homeowner may file a lawsuit directly against board members. It argued that because the *Alexander* court held that an individual homeowner may sue homeowners' association board members, 2nd Half may sue the board members in this case.

In a responsive memorandum, the Rankoses argued that unlike the homeowners in *Alexander*, 2nd Half failed to allege injury to itself or damages owed to 2nd Half, and thus it lacked standing to bring its complaint.

When the superior court considered the Rankoses' summary judgment motion, it considered the parties' briefing discussed above, the declaration of the Rankoses' attorney, Elizabeth Powell, in support of the motion, and the declaration of Jeff Graham in opposition. Powell's declaration and its attachments contained no evidence relevant to the Betournay dues issue.[5] Similarly, Jeff Graham's declaration briefly mentioned that the board members "are not

---

[4] 181 Wn. App. 135, 325 P.3d 341 (2014).

[5] The attachments contain documents related to the sheriff sale issue, attorney fees, and conflicts of interest involving 2nd Half's attorney.

fairly calculating the amounts everyone owes," but provided no additional statements to explain or provide a factual basis for the Betournay dues claim. CP at 548. Graham's declaration focuses almost exclusively on allegations that are not relevant on appeal, including the issue related to the sheriff's sale. The Graham declaration did not discuss any damages that 2nd Half suffered as a result of the board's alleged breaches of duty.

In its oral ruling, the superior court agreed with the superior court's prior Webster ruling; it did not think that *Alexander* allowed 2nd Half to file a direct claim against Association board members. The superior court granted the Rankoses' summary judgment motion. 2nd Half appeals.

ANALYSIS

I. THRESHOLD ISSUES

As threshold matters, we address two issues: whether 2nd Half appealed the Webster summary judgment order, and whether the superior court's oral statements are properly before us. We hold that neither the Webster order nor the superior court's oral rulings are properly before us.

A. WEBSTER MOTION NOT APPEALED

Webster and the Rankoses argue that the Webster order is not properly before this court. We agree.

Applying court rules to the facts is a question of law we review de novo. *Wiley v. Rehak*, 143 Wn.2d 339, 343, 20 P.3d 404 (2001). An appellate court's review is necessarily limited by the scope of a given appeal, which is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties. *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013). The notice of appeal must designate the decision or part of decision that the party wants reviewed. RAP 5.3(a); *Clark County*, 177 Wn.2d at 144-

45. After a decision or part of a decision has been identified in the notice of appeal, the assignments of error and substantive argumentation further narrow which claims and issues the parties have presented for appellate review. *Clark County*, 177 Wn.2d at 145.

Here, 2nd Half's notice of appeal designates only the order granting the Rankoses' summary judgment motion, and it fails to mention the order granting Webster's motion. The notice of appeal says, "2nd Half, LLC seeks review by [t]he Court of Appeals Division II of the Superior Court's final Order dismissing all claims entered November 23, 2016. A copy of the Order appealed is attached." CP at 630. The attached order granted the Rankoses' summary judgment motion and does not mention Webster. As such, the notice of appeal designated only the Rankoses' order.

Arguably, 2nd Half's assignments of error and substantive arguments apply to both summary judgment orders, but assignments of error and argument may not expand the scope of review. *See Clark County*, 177 Wn.2d at 144-45. Because 2nd Half did not designate the Webster order in its notice of appeal, any arguments it raises regarding that order are outside this appeal's scope.

### B. SUPERIOR COURT'S ORAL RULINGS

2nd Half challenges the superior court's oral ruling on reconsideration of Webster's summary judgment motion. And 2nd Half challenges the superior court's oral statements regarding the Rankoses' summary judgment motion. The Rankoses and Webster argue that we should not consider 2nd Half's arguments related to the superior court's oral statements because appellate review of summary judgment motions is de novo and oral statements cannot be used to "'impeach . . . the judgment.'" Resp'ts' Resp. at 3 (quoting *Rutter v. Rutter's Estate*, 59 Wn.2d

781, 784, 370 P.2d 862 (1962)). We agree that the superior court's oral rulings are not properly before us.

We do not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). In addition, we do not consider a superior court's superfluous findings of fact and conclusions of law because we review orders granting summary judgment de novo. *Westberry v. Interstate Distrib. Co.*, 164 Wn. App. 196, 204, 209, 263 P.3d 1251 (2011).

Here, although 2nd Half extensively discusses and quotes the superior court's statements during the hearing for 2nd Half's motion for reconsideration for the Webster order, 2nd Half failed to designate this transcript on appeal. As such, it is outside our record, and we do not consider it. Furthermore, our de novo review of 2nd Half's challenge to the Rankoses' summary judgment order does not include consideration of the superior court's "superfluous" discussion. *See Westberry*, 164 Wn. App. at 204, 209. To the extent 2nd Half challenges the superior court's oral statements and reasoning as a basis to deny summary judgment, its claim fails.

## II. SUMMARY JUDGMENT

The parties dispute whether the Rankoses' summary judgment motion was properly granted. We agree with the Rankoses and Webster that 2nd Half lacks standing and that summary judgment was properly granted.

### A. PRINCIPLES OF LAW

We review a superior court's order granting summary judgment de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). "We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."

*Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Standing is a threshold issue, which we review de novo. *Alexander*, 181 Wn. App. at 149. "'To have standing, one must have some protectable interest that has been invaded or is about to be invaded.'" *Alexander*, 181 Wn. App. at 149-50 (quoting *Orion Corp. v. State*, 103 Wn.2d 441, 455, 693 P.2d 1369 (1985)). To establish a condominium board's breach of duty under RCW 64.34.308, a plaintiff must prove duty, breach, causation, and damages. *Alexander*, 181 Wn. App. at 170.

## B. No Standing

2nd Half argues, as it did before the superior court, that it should survive summary judgment because the board owed a duty of care to 2nd Half, and thus it was authorized to bring a direct rather than a derivative action against the board members. We hold that even if the board members owed a duty of care to 2nd Half, 2nd Half has not established that it has standing in this case, and thus its claim fails.

2nd Half relies solely on *Alexander* to support that the board owed a duty of care to individual homeowners such that 2nd Half can properly maintain an action against the board members for their failure to exercise reasonable care in collecting the Betournays' dues. 2nd Half is correct that a homeowners' association may owe a duty of care to individual members of the association in some circumstances. *Alexander*, 181 Wn. App. at 169-70. But 2nd Half has failed

to explain how the board's alleged failure to exercise reasonable care in collecting dues *owed to the Association* breached a duty of care *owed to 2nd Half* or invaded any of 2nd Half's protectable interests.[6]

In *Alexander*, individual homeowners in the association had standing to sue board members when the homeowners alleged that the board members engaged in acts that caused water intrusion and other defective conditions that damaged and reduced the value of homeowners' real property and resulted in repair costs to homeowners. 181 Wn. App. at 147, 149-50. The *Alexander* court specifically stated that because the homeowners sued on behalf of themselves for damages caused to their own personal property, the homeowners had standing to sue for the alleged injury; as such, the court said that it did not need to decide whether a derivative action would have been proper because homeowners were alleging damage to their individual property and not the homeowners' associations' interest. 181 Wn. App. at 150 n.15.

*Alexander*, involving claims for individual property damage, does not support 2nd Half's claim that it can sue the Association board for failing to collect dues owed to the Association. 2nd Half's complaint alleged no individual damage to itself or its property. Instead, the complaint's prayer for relief, in relevant part, asked the superior court to find that defendants are "*liable to the Association* for the fees, and collection costs . . . alleged to be $20,000" that "would have been recovered from the Betournays, but which have been made unrecoverable on account of the defendants['] acts and omissions." CP at 10 (emphasis added). 2nd Half has not attempted to

---

[6] 2nd Half also failed to assert a breach of duty *owed to 2nd Half* in its complaint. Its complaint asserts that the board members only breached a duty owed to the Association as a whole. Thus, even if 2nd Half could have maintained an action against the board members based on a breach of duty owed to 2nd Half, that is not the action that 2nd Half asserted.

explain how these damages owed to the Association in any way impact 2nd Half's individual interests. Thus, even if *Alexander* supports that the Association board owed a duty of care to 2nd Half, the case does not support that 2nd Half had standing to bring a direct action against the Association where, unlike the homeowners in *Alexander*, 2nd Half alleged no damages to itself. 181 Wn. App. at 149-50.

2nd Half has not demonstrated that it individually has a protectable interest that has been invaded by the board members' alleged breach of duty. *See Alexander*, 181 Wn. App. at 150; *Orion Corp.*, 103 Wn.2d at 455. Because 2nd Half has failed to point to any facts showing that its protectable interest was invaded, it has not established that it has standing to directly sue the Association, and the Rankoses and Webster are entitled to summary dismissal.[7]

## III. ATTORNEY FEES

Webster and the Rankoses argue that under the condominium declaration, RCW 64.34.455, and RAP 18.9, they are entitled to attorney fees and costs. We award costs and fees as provided by the parties' condominium declaration.

Whether a party is entitled to attorney fees under a contract or statute is a question of law we review de novo. *Tradewell Grp., Inc. v. Mavis*, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993). Attorney fees may be awarded when authorized by a contract, a statute, or a recognized ground in equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004).

---

[7] Webster and Rankos also argue that even if the board owed a duty to 2nd Half, it failed to support a breach of duty or damages because *the dues were actually paid*. Because the superior court, in considering Rankoses' summary judgment motion, did not have before it affidavits or other evidence that would support a finding that the dues were paid, such evidence is not properly before this court and we cannot consider whether the dues were actually paid.

RCW 64.34.455 authorizes an award of fees to a prevailing party in an action brought under a condominium declaration. *Marina Condo. Homeowner's Ass'n v. Stratford at Marina, LLC*, 161 Wn. App. 249, 265, 254 P.3d 827 (2011).

Here, the condominium declaration states that "if any dispute should arise regarding the terms of this Declaration . . . the prevailing party shall recover reasonable attorney's fees and costs, including those for appeals." CP at 464. 2nd Half's complaint alleges that the Rankoses and Webster violated their duty of reasonable care provided under the declaration. As the prevailing parties in this lawsuit, the Rankoses and Webster are entitled to fees under the declaration and under RCW 64.34.455. *Labriola*, 152 Wn.2d at 839; *Marina Condo. Homeowner's Ass'n*, 161 Wn. App. at 265.

We also award attorney fees under RAP 18.9. RAP 18.9(a) allows us to award sanctions, such as a grant of attorney fees and costs to an opposing party, when a party brings a frivolous appeal. An appeal is frivolous when there are no debatable issues upon which reasonable minds may differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal. *Granville Condo. Homeowners Ass'n v. Kuehner*, 177 Wn. App. 543, 557-58, 312 P.3d 702 (2013). We resolve all doubts as to whether an appeal is frivolous in favor of the appellant. *Granville Condo. Homeowners Ass'n*, 177 Wn. App. at 558.

2nd Half's appeal is frivolous. Much of its argument focuses on alleged errors in the superior court's oral rulings when our standard of review on summary judgment is de novo and the oral statements are irrelevant and unreviewable. In addition, its argument on appeal regarding *Alexander* is frivolous. *See Granville Condo. Homeowners Ass'n*, 177 Wn. App. at 557-58. 2nd Half's assertion that the board members owe a duty of care to homeowners could not result in

No. 49815-4-II

reversal because 2nd Half failed to allege an invasion of any of its own interests, and therefore it did not establish that it had standing to bring a direct claim against the board members. 2nd Half made no attempt to explain why *Alexander* should be controlling here. This frivolous claim should result in sanctions.

Subject to Webster's and the Rankoses' compliance with RAP 18.1, we award their attorney fees on appeal in an amount to be determined by a commissioner of this court.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, C.J.

MELNICK, J.

13